UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| DARRYL COTTON, | Case No.: 18cv325-GPC(MDD) |
|---|---|
| Plaintiff, | **ORDER:** |
| v. | **1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS** |
| LARRY GERACI, an individual; REBECCA BERRY, an individual; GINA AUSTIN, an individual AUSTIN LEGAL GROUP, a professional corporation; MICHAEL WEINSTEIN, an individual; FERRIS & BRITTON, a professional corporation; CITY OF SAN DIEGO, a public entity; and DOES 1 through 10, inclusive,, | **2) SUA SPONTE STAYING THE CASE PURSUANT TO THE COLORADO RIVER DOCTRINE** |
| | **3) DENYING EX PARTE MOTION FOR TEMPORARY RESTARINING ORDER; AND** |
| Defendant. | **4) DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL** |

On February 9, 2018, Plaintiff Darryl Cotton ("Plaintiff"), proceeding pro se, filed a complaint against Defendants Larry Geraci, Rebecca Berry, Gina Austin, Austin Legal Group, Michael Weinstein, Ferris & Britton, and the City of San Diego ("Defendants") alleging eighteen causes of action under federal and state law as well as declaratory and injunctive relief. Plaintiff concurrently filed a motion for leave to proceed *in forma*

1

18cv325-GPC(MDD)

*pauperis* ("IFP") under 28 U.S.C. § 1915(a) ("§ 1915(a)"). (Dkt. No. 2.) Furthermore, Plaintiff filed an ex parte application for a temporary restraining order ("TRO"), as well as a motion for appointment of counsel. (Dkt. Nos. 3, 6.) Based on the reasoning below, the Court GRANTS Plaintiff's motion to proceed IFP, *sua sponte* STAYS the case pursuant to the Colorado River doctrine, and DENIES Plaintiff's ex parte motion for TRO and motion for appointment of counsel as MOOT.

## Discussion

### A. Motion to Proceed *In Forma Pauperis*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400. See 28 U.S.C. § 1914(a).[1] An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to § 1915(a). See Andrews v. Cervantes, 493 F.3d 1047, 1051 (9th Cir. 2007); Rodriguez v. Cook, 169 F.3d 1176, 1177 (9th Cir. 1999). The plaintiff must submit an affidavit demonstrating his inability to pay the filing fee, and the affidavit must include a complete statement of the plaintiff's assets. 28 U.S.C. § 1915(a)(1). When a plaintiff moves to proceed IFP, the court first "grants or denies IFP status based on the plaintiff's financial resources alone and then independently determines whether to dismiss the complaint" pursuant to 28 U.S.C. § 1915(e)(2) ("§ 1915(e)(2)"). Franklin v. Murphy, 745 F.2d 1221, 1226 n.5 (9th Cir. 1984).

Here, Plaintiff submitted a declaration reporting that he is currently unemployed, and he receives $192 a month from public assistance and $600 a month from "Recycled Material Processing." (Dkt. No. 2 at 2.) Plaintiff declares that he has real estate valued

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. See 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2014)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. Id.

at $400,000 and a car valued at $1,400. (Id. at 3.) Plaintiff reported no debts nor dependents. (Id. at 3.) He has living expenses totaling $2,935.00. (Id. at 4-5.)

In consideration of Plaintiff's application, the Court finds that Plaintiff has sufficiently demonstrated that he is unable to pay the required filing fee and meets the § 1915(a) requirements to proceed IFP. Therefore, the Court GRANTS Plaintiff's motion for leave to proceed IFP.

B. *Sua Sponte* Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)

A complaint filed by any person proceeding IFP pursuant to § 1915(a) is subject to mandatory *sua sponte* review and dismissal by the Court if it is "frivolous, or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners."); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000). § 1915(e)(2) mandates that a court reviewing a complaint filed pursuant to the IFP provisions of 28 U.S.C. § 1915 make and rule on its own motion to dismiss before directing that the complaint be served by the U.S. Marshal pursuant to Federal Rule of Civil Procedures 4(c)(2). Lopez, 203 F.3d at 1127.

C. **Factual Background**

On March 21, 2017, Defendant Larry Geraci filed a complaint against Plaintiff Cotton in San Diego Superior Court alleging breach of contract, breach of the covenant of good faith and fair dealing, specific performance and declaratory relief. (Dkt. No. 3-11, P's RJN, Ex. 2, State Court Compl.) According to the state court complaint, the parties entered into a written agreement for the purchase and sale of Cotton's real property located 6176 Federal Boulevard, San Diego, CA on November 2, 2016. (Id., Compl. ¶ 7.) A copy of the written agreement is attached as exhibit A to the state court complaint. (Id., Ex. A.) On that day, Geraci paid Cotton $10,000 good faith earnest money to be applied to the sales price of $800,000 and to remain in effect until a conditional use permit ("CUP") is approved by the City of San Diego. (Id. ¶ 8.) Geraci

3

made efforts and spent money to obtain a CUP which is a long and time-consuming process, including hiring a consultant to coordinate the CUP efforts, Defendant Rebecca Berry, as well as an architect. (Id. ¶ 9.) The state court complaint claims that Cotton has anticipatorily breached the contract stating he will not perform according to the terms of the written contract. (Id. ¶ 11.) Specifically, Geraci alleges that Cotton "has stated that, contrary to the written terms, the parties agreed to a down payment or earnest money in the amount of $50,000.00 and that he will not perform unless GERACI makes a further down payment. COTTON has also stated that, contrary to the written terms, he is entitled to a 10% ownership interest in the PROPERTY and that he will not perform unless GERACI transfers to him a 10% ownership interest. COTTON has also threatened to contact the City of San Diego to sabotage the CUP process by withdrawing his acknowledgment that GERACI has a right to possession or control of the PROPERTY if GERACI will not accede to his additional terms and conditions and, on March 21, 2017, COTTON made good on his threat when he contacted the City of San Diego and attempted to withdraw the CUP application." (Id.)

At some point, Cotton filed a cross-complaint against Geraci and Rebecca Berry. (Dkt. No. 3-13, P's RJN, Ex. 5.) On December 6, 2017, Cotton, with counsel, filed an ex parte application for temporary restraining order and order to show cause regarding preliminary injunction. (Dkt. No. 3-13, P's RJN, Ex. 4.) It sought an injunction against Geraci and Berry to recognize Cotton as a co-applicant on the CUP. (Id. at 6.[1]) On December 7, 2017, the Superior Court denied the request for TRO and set a date for hearing on preliminary injunction for January 25, 2018. (Id., Ex. 6.) On December 12, 2017, the state court denied Cotton's, now proceeding pro se, ex parte application for reconsideration of the state court's ruling on the TRO. (Id., Ex. 7.)

---

[1] Page numbers are based on the CM/ECF pagination.

4

On January 25, 2018, the state court held a hearing on Cotton's writ of mandate and motion for preliminary injunction, and Geraci and Berry's motion to compel Cotton's deposition. (Id., Ex. 8.) In its brief order, the state court noted no additional papers were filed, and denied Cotton's writ of mandate and denied his motion for a preliminary injunction, and granted Geraci and Berry's motion to compel Cotton's deposition. (Id.)

On February 9, 2018, Plaintiff Cotton filed the instant complaint alleging breach of contract of the agreement between him and Geraci on November 2, 2016 as well as seventeen causes of action. (Dkt. No. 1, Compl.) Cotton's property at 6176 Federal Boulevard, San Diego, CA, qualifies for a Conditional Use Permit ("CUP") for the establishment of a Medical Marijuana Consumer Collective ("MMCC") (Id. ¶ 2.) If the CUP is approved, the value of the property will potentially be greater than $100 million. (Id. ¶¶ 2, 3.) On November 2, 2016, Cotton and Geraci orally agreed to terms for the sale of Cotton's property. (Id. ¶ 44.) The oral agreement contained condition precedents prior to closing. (Id. ¶ 45.) The Agreement required that Geraci provide a $50,000 non-refundable deposit for Cotton to keep if the CUP was not issued; a total purchase price of $800,000 if the CUP was issued; and a 10% equity stake in the MMCC with a guaranteed monthly equity distribution of $10,000. (Id. ¶ 46.) According to Cotton, Geraci provided Cotton with $10,000 cash to be applied toward the non-refundable deposit of $50,000 and had Cotton execute a document to record his receipt of the money and promised to have his attorney, Gina Austin, speedily draft a final, written purchase agreement for the Property that would memorialize their oral terms. (Id. ¶ 47.) They agreed to two written agreements: the "purchase agreement" for the sale of the property and a "side agreement" concerning Cotton's equity stake and other provisions. (Id. ¶ 48.)

Plaintiff claims he has definitive proof of the terms of their agreement based on a confirmation email Geraci sent to Cotton stating, "No No problem at all" when Cotton emailed Geraci noting that the 10% equity interest in the dispensary was not added into their purchase agreement of November 2, 2016 and asked that Geraci simply acknowledge that interest in a reply email. (Id. ¶ 49.) According to Cotton, Geraci's

response to the email demonstrates that the November 2, 2016 agreement is not the final agreement. (Id. ¶ 50.) He also claims that Geraci emailed him a draft "side agreement" providing for the 10% interest. (Id. ¶¶ 52-54.) Cotton argues that Geraci breached the Agreement by filing the CUP application without first paying the balance of $40,000, and failing to provide the final agreement as promised. (Id. ¶ 56.) Geraci made it clear he would not honor the Agreement, and then Cotton responded informing Geraci that he no longer has any interest in his property. (Id. ¶ 59.) In desperate need of funds, Cotton entered into a written real estate purchase agreement with a third party. (Id.)

Cotton alleges causes of action against Geraci and his agent Rebecca Berry, their attorneys for their actions during the underlying state court complaint, and the City of San Diego for its handling of the CUP. (Dkt. No. 1.)

### D.  Colorado River Abstention Doctrine

In general, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). However, the Court recognized that considerations of "'[w]ise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation'" allows a district court from either staying or dismissing a case pending resolution of concurrent state court litigation. Id. (quoting Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).

The Court was concerned about the "problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts." Smith v. Central Arizona Water Conserv. Dist., 418 F.3d 1028, 1032 (9th Cir. 2005); Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 734 (9th Cir. 1991) (The Colorado River abstention may be exercised only "in situations involving the contemporaneous exercise of concurrent jurisdictions, either by the federal courts or by state and federal courts."). Nonetheless, the Court has noted that the Colorado River abstention should be invoked only in "exceptional circumstances." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983).

The Colorado River doctrine may be raised by the Court *sua sponte*. See Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 n. 4 (1st Cir. 2010) (even though issue was not raised below, decision to decline jurisdiction under Colorado River may be raised sua sponte); Heiner v. Fed. Nat'l Mort. Ass'n, No. 13cv364-DN, 2014 WL 4851888, at *5, 8 (D. Utah Sept. 29, 2014) (proposed amended complaint would be futile as it would be subject to dismissal under the Colorado River doctrine under sua sponte analysis of 28 U.S.C. § 1915(e)(2)(B)(ii).)

The Ninth Circuit has identified "eight factors for assessing the appropriateness of a Colorado River stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 978-79 (9th Cir. 2011) (citing Holder v. Holder, 305 F.3d 854, 870 (9th Cir. 2002)). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.'" American Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting Moses Cone, 460 U.S. at 16).

The first factor is neutral as this case does not involve an in rem or quasi in rem proceeding. "Where concurrent proceedings in state and federal court are both suits in rem or quasi in rem, the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." Knaefler v. Mack, 680 F.2d 671, 675 (9th Cir. 1982). The Supreme Court has held "that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." Colorado River, 424 U.S. at 818. "Actions relating to land, such as suits to quiet title, are denominated quasi-in-rem." Park v. Powers, 2 Cal. 2d 590, 598-99 (1935). Here, there is

no dispute as to the ownership of the property but a breach of contract claim concerning the sale of property.

Next, the second factor concerning the inconvenience of the federal forum is neutral since the location of the state and federal courts are both located in San Diego and the parties reside in San Diego. (Dkt. No. 1, Compl. ¶¶ 26-37.)

The third factor concerning the desire to avoid piecemeal litigation strongly weighs in favor of a stay or dismissal. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Seneca Ins. Co., Inc. v. Strange Land, Inc., 862 F.3d 835, 842 (9th Cir. 2017) (quoting Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)). Here, Plaintiff seeks to litigate the exact same issues that are currently pending in state court in this Court. Not only will both courts consider the same issues but could possibly reach different results.

Fourth, the state court action was filed first in March 2017 and appears to be in the middle of discovery[2] while this case was recently filed on February 9, 2018. Therefore, this factor favors application of the Colorado River doctrine.

The fifth factor looks at whether federal or state law provides the rule of decision on the merits and the sixth factor considers whether the state court proceedings can adequately protect the rights of the federal litigant. In this case, there are two federal causes of action for an unlawful seizure and violation of due process under 28 U.S.C. § 1983 and sixteen state law causes of action. Therefore, state and federal law will apply in this case. While federal law will apply to the § 1983 causes of action, state courts have concurrent jurisdiction over these claims. See Maine v. Thiboutot, 448 U.S. 1, 3 n. 1 (1980) (finding concurrent jurisdiction over 42 U.S.C. § 1983 suits, despite federal procedural provisions in § 1988); Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 506-07

---

[2] On January 25, 2018, the state court granted Plaintiff's motion to compel the deposition of Defendant Cotton. (Dkt. No. 3-13, P's RJN, Ex. 8.)

(1982) (canvassing the legislative debates of the 1871 Congress and noting that "many legislators interpreted [§ 1983] to provide dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief"); but see Krieger v. Atheros Comm'ns, Inc., 776 F. Supp. 2d 1053, 1059-60 (N.D. Cal. 2011) (claims under the Securities Exchange Act are within the exclusive jurisdiction of the federal courts and therefore does not provide reason to stay under the Colorado River doctrine). "[I]f there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate." R.R. Street & Co., Inc., 656 F.3d at 981; but see Holder, 305 F.3d at 869 n. 5 (state court probably lacked jurisdiction to hear the plaintiff's federal International Child Abduction Remedies Act ("ICARA") claim). Here, the state court is able to address the state law causes of action as well as the 1983 causes of action. These two factors weigh in favor of a stay or dismissal.

The seventh factor on whether the complaint filed in this case is an attempt by Plaintiff to forum shop strongly weighs in favor of a stay or dismissal. See Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir. 1989) (after three and a half years, Nakash was dissatisfied with the state court and sought a new forum and the court has "no interest in encouraging this practice."); Conte v. Aargon Agency, Inc., No. 12cv2811-MCE-DAD, 2013 WL 1907722, at *5 (E.D. Cal. May 7, 2013) (filing of federal action shortly after adverse state court ruling demonstrated "reactive nature" of the federal lawsuit). In this case, Plaintiff is frustrated and dissatisfied with the acts taken by the defendants in the underlying state court case, and dissatisfied with the rulings of the state court. (See Dkt. No. 1, Compl. ¶¶ 79, 81-83, 97, 130, 131 134.) As a result, Cotton filed the instant complaint alleging the same breach of contract of the Agreement made on November 2, 2016 between Cotton and Geraci. Cotton also filed a cross-complaint against Geraci and Berry in the state court complaint but it is not provided to the Court. In this case, Cotton also added additional defendants based on his dissatisfaction with their role during the state court litigation which include claims against Geraci's agent, Berry, Geraci's attorneys, and the City of San Diego for its handling of the CUP. (Dkt. No. 1.)

In fact, Plaintiff Cotton expressly asks this Court to review the evidence currently pending in state court. (Dkt. No. 1, Compl. ¶ 150.) As stated in the TRO application, Cotton is "seeking the same injunctive relief requested . . . ." (Dkt. No. 3-1, at 7.) He provides the state court pleadings so that this Court can "make its own evaluation of whether the state court judge's orders can be supported by the evidence and arguments they were presented with." (Id. at 8.) Cotton is clearly forum shopping by asking this Court to review the evidence and rulings of the state court, a factor that strongly supports a stay or dismissal.

The final factor, whether the state court proceedings will resolve all issues before the federal court weighs in favor of a stay or dismissal. "[E]xact parallelism" is not required; "[i]t is enough if the two proceedings are 'substantially similar.'" Nakash, 882 F.2d at 1416 (citations omitted). Proceedings are "substantially similar" when they arise out of the same conduct or interactions between the parties. Silvaco Data Sys. v. Technology Modeling Assocs., 896 F. Supp. 973, 976 (N.D. Cal. 1995) (state and federal actions substantially similar for purposes of Colorado River even though they did not address identical factual or legal issues). "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." Intel Corp. v. Adv. Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993). Here, the state court complaint and this federal complaint are substantially similar as they both concern the same November 2, 2016 agreement between Cotton and Geraci and subsequent disputed actions. While there are additional defendants and causes of action in this case, these claims arise out the same November 2 Agreement. This factor weighs in favor of the application of the Colorado River doctrine.

Accordingly, given the pendency of the parallel state proceeding and evaluating the factors in this case, the Court STAYS the case pending resolution of the state court action pursuant to the Colorado River doctrine. See R.R. St. & Co., 656 F.3d at 978 n. 8 ("We generally require a stay rather than a dismissal.")

**Conclusion**

Based on the above, the Court GRANTS Plaintiff's motion for IFP status, STAYS the case until resolution of the parallel state court action and DENIES Plaintiff's ex parte motion for temporary restraining order and motion for appointment of counsel as MOOT. Plaintiff shall notify the Court promptly upon final judgment in the state court action.

IT IS SO ORDERED.

Dated: February 28, 2018

Hon. Gonzalo P. Curiel
United States District Judge