UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL COTTON, an individual,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GINA M. AUSTIN, an individual;<br>JESSICA MCELFRESH, an individual;<br>DAVID S. DEMIAN, an individual; and<br>DOES 1-50, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 18cv325-JO-DEB<br><br>**ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |

　　　Plaintiff Darryl Cotton, proceeding *pro se*, filed a Second Amended Complaint alleging two causes of action under 42 U.S.C. §§ 1983 and 1985 against Defendants David S. Demian, Gina M. Austin, and Jessica McElfresh. Dkt. 97 (SAC). Defendants filed motions to dismiss the SAC for failure to state a claim. Dkts. 98, 99, 100. For the reasons discussed below, the motions to dismiss are GRANTED.

# I. BACKGROUND

The claims in this litigation stem from Plaintiff's agreement to sell his property to a businessman named Larry Geraci and his attempts to obtain a cannabis permit for this property after its sale to Mr. Geraci fell through. After extensive litigation with Mr. Geraci in state court over the breach of the sale agreement, Plaintiff now alleges in federal court that Defendants Demian, Austin, and McElfresh, three private attorneys who were involved in the state court litigation, violated his constitutional rights.

In late 2016, Plaintiff entered into an agreement to sell his commercial real property to a businessman and tax consultant named Larry Geraci. SAC ¶¶ 31–34. Mr. Geraci planned to develop a cannabis dispensary on this property. SAC ¶ 35. Without telling Plaintiff, Mr. Geraci applied for a permit to run commercial cannabis operations on Plaintiff's property after completion of the sale. SAC ¶¶ 42–43. Because Mr. Geraci was unable to legally own or apply for a permit due to his prior illegal commercial cannabis operations, he submitted the application under the name of his assistant, Rebecca Berry. SAC ¶¶ 19–21, 36, 43. Plaintiff alleges that Defendants McElfresh and Austin provided legal assistance to Mr. Geraci on this cannabis permit application submitted under Ms. Berry's name. SAC ¶¶ 36, 165. Ultimately, the agreement between Plaintiff and Mr. Geraci broke down and the sale of Plaintiff's property to Mr. Geraci was never executed.

After the termination of the sale agreement with Mr. Geraci, Plaintiff sought to transfer the cannabis permit application to his name instead. Plaintiff met with Firouzeh Tirandazi, an employee of the city of San Diego, and requested that she transfer to him the cannabis permit application initiated by Mr. Geraci. SAC ¶¶ 44–46. Ms. Tirandazi refused on the grounds that only Ms. Berry, as the designated "Financially Responsible Party," could cancel or transfer the application. SAC ¶ 47. Plaintiff alleges that Ms. Tirandazi knew the cannabis permit application was submitted under the wrong name, but she "conspired with Geraci and his agents" to allow Mr. Geraci to illegally acquire the cannabis permit and prevent Plaintiff from acquiring the permit instead. SAC ¶¶ 49–50. He contends that Defendants Austin and McElfresh were a part of this conspiracy but does not

plead any additional facts regarding their role in the conspiracy aside from those set forth above. *See* SAC ¶¶ 24–29, 36, 55.

The termination of the property sale agreement between Plaintiff and Mr. Geraci also sparked litigation in state court. Mr. Geraci, represented by Defendant McElfresh, and Plaintiff, represented by Defendant Demian, brought claims against each other for breach of contract and fraud ("*Cotton I*"). SAC ¶ 53. Plaintiff alleges that Defendant Demian sabotaged his litigation while representing him; Plaintiff eventually terminated this attorney-client relationship because Mr. Demian failed to raise favorable arguments on his behalf. SAC ¶¶ 57–60.

Plaintiff further alleges that, during the course of the *Cotton I* litigation, a non-party individual named Mr. Magagna engaged in witness intimidation to the detriment of Plaintiff's case. According to Plaintiff, Corina Young agreed to testify at trial in *Cotton I* that an individual named Mr. Bartell had discouraged her from "investing" in Plaintiff's litigation. SAC ¶ 127. In order to prevent her from testifying on Plaintiff's behalf, Mr. Magagna and Mr. Geraci threatened and "bribed" her, and then offered her a job in Palm Springs at a dispensary that Defendant Austin formerly represented. SAC ¶¶ 140–42, 149. As a result, Ms. Young cancelled her deposition, refused to testify at trial, and moved to Palm Springs. SAC ¶¶ 139, 147–148, 180. *Cotton I* was tried before a jury and resulted in a judgment in favor of Mr. Geraci. SAC ¶¶ 81–82.

On February 9, 2018, Plaintiff initiated the instant action against Mr. Geraci, Ms. Berry, Ms. Austin, various law firms involved in *Cotton I*, and the City of San Diego.[1] Dkt. 1. On May 13, 2020, Plaintiff filed a First Amended Complaint alleging claims under 42 U.S.C. § 1983 and adding as defendants Mr. Demian, Ms. McElfresh, and various state and federal judges. Dkt. 18. On March 17 and October 22, 2021, the Court granted the

---

[1] On February 28, 2018, the Court *sua sponte* stayed the action because *Cotton I* was still pending in state court. Dkt. 7. On January 15, 2020, the Court lifted the stay because the *Cotton I* litigation concluded with a judgment in favor of Mr. Geraci. Dkt. 11.

defendants' motions to dismiss the First Amended Complaint and granted Plaintiff leave to amend.[2]  Dkts. 71, 96.

On November 22, 2021, Plaintiff filed the operative SAC against Defendants Austin, McElfresh, and Demian only.  Dkt. 97.  The SAC alleges that these Defendants conspired with Ms. Tirandazi to (1) impede Plaintiff's acquisition of a cannabis permit and (2) during the *Cotton I* trial, cover up Mr. Geraci's illegal acts to obtain the cannabis permit in violation of 42 U.S.C. § 1983.  Plaintiff further alleges that Defendants conspired with Mr. Magagna and Mr. Geraci to prevent Ms. Young from testifying as a witness in the *Cotton I* trial in violation of 42 U.S.C. § 1985.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  A court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  However, a court need not accept conclusory allegations as true, but "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff."  *Holden v. Hagopian*, 978 F.2d 115, 1121 (9th Cir. 1992).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  To avoid a Rule 12(b)(6) dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  While a plaintiff need not give "detailed factual allegations," a plaintiff

---

[2] Judge Robinson issued this order prior to the transfer of this action to Judge Ohta on January 3, 2022.

must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Plausibility requires pleading facts, as opposed to conclusory allegations, which rise above the mere conceivability or possibility of unlawful conduct. *Twombly*, 550 U.S. at 555. Although *pro se* pleadings are construed liberally to determine whether a claim has been stated, *see Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001), a plaintiff must still present factual and non-conclusory allegations to state a claim. *Twombly*, 550 U.S. at 555; *Hebbe v. Pliler*, 627 F.3d 338, 341–41 (9th Cir. 2010).

When a complaint fails to state a claim as set forth above, a plaintiff may seek leave to amend to cure its deficiencies. Federal Rule 15(a) provides that a district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). In deciding whether to grant leave to amend, the court considers the following factors: the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

A district court has discretion to deny leave to amend when a proposed amendment would be futile. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 725–26 (9th Cir. 2000). Amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Thus, leave to amend should be denied where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *New v. Armour Pharm. Co.*, 67 F.3d 716, 722 (9th Cir. 1995); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (amended complaint may not contradict prior pleadings). Repeated failure to cure deficiencies by amendment previously allowed is also a reason to deny leave to amend. *Foman*, 371 U.S. at 182. "[W]hen a

district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

## III. DISCUSSION

### A. Plaintiff Fails to Plead a Section 1983 Claim Because Defendants Did Not Act Under the Color of State Law

In the first cause of action of the SAC, Plaintiff alleges that Defendants, in violation of 42 U.S.C. § 1983, conspired with Ms. Tirandazi to (1) deny Plaintiff's right to obtain a cannabis permit, SAC ¶ 185, and (2) deny Plaintiff's meaningful access to the courts by covering up Mr. Geraci's illegal attempts to acquire a cannabis permit during the *Cotton I* litigation ("Cannabis Permit conspiracy"). SAC ¶ 182. Defendants argue that Plaintiff has not alleged they engaged in action "under color of state law," as required for Section 1983 claims.

To state a claim under Section 1983, a plaintiff must "(1) allege the violation of a right secured by the Constitution and laws of the United States; and (2) show that the alleged deprivation was committed by a person acting under the color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015) (internal quotations omitted). The court presumes that private conduct does not constitute action under the color of state law. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). However, Section 1983 actions "can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "One way the 'joint action' test is satisfied is if a 'conspiracy' is shown." *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir. 1983). In other words, "[a] private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).

Alleging a viable Section 1983 claim against private parties, however, takes more than just conclusory allegations of a conspiracy. *Woodrum v. Woodward County*, 866 F.2d

Case 3:18-cv-00325-JO-DEB Document 117 Filed 09/21/22 PageID.4263 Page 7 of 12

1121, 1126 (9th Cir. 1989). Instead, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional violation. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999). A plaintiff must allege an "'agreement or meeting of the minds' to violate constitutional rights" between a private party and the government. *Fonda*, 707 F.2d at 438 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights" and demonstrate a "substantial degree of cooperation" with the government to violate those rights. *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002).

Because Defendants are three private attorneys rather than state or municipal employees, the Court begins by examining whether Plaintiff sufficiently alleges that Defendants conspired or acted jointly with a state actor. The following summarizes the entirety of Plaintiff's factual allegations regarding Defendants' participation in the Cannabis Permit conspiracy: Regarding Defendant McElfresh, Plaintiff alleges that she represented Mr. Geraci during the cannabis permit application despite knowing it was illegal for Mr. Geraci to have a permit. SAC ¶ 165. Ms. McElfresh also referred Plaintiff to Mr. Demian's law firm "knowing they would take action to sabotage" Plaintiff's case in the *Cotton I* litigation. SAC ¶ 163–65. As to Defendant Austin, Plaintiff alleges that she similarly assisted Mr. Geraci in illegally submitting a cannabis permit application, SAC ¶¶ 36, 161, and presented false testimony in Mr. Geraci's favor during the *Cotton I* litigation. SAC ¶¶ 68–72. Plaintiff also alleges that Ms. Austin attended law school with Ms. Young's attorney and previously represented the dispensary in Palm Springs that employed Ms. Young, but does not provide any more allegations regarding Ms. Austin's participation in preventing Ms. Young's testimony. SAC ¶¶ 137, 149. As to Mr. Demian, Plaintiff's only allegations concern his alleged shortcomings as an attorney while representing him in *Cotton I*. Mr. Demian and his law firm allegedly failed to disclose their prior relationships with Mr. Geraci, amended Plaintiff's pleadings to sabotage his case, sought to have


18cv325-JO-DEB

Plaintiff admit untrue facts in a declaration, and failed to raise favorable arguments on Plaintiff's behalf. SAC ¶¶ 166–170.

After liberally construing the above allegations and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to allege that Defendants entered into an agreement with a state actor or substantially cooperated with one to violate Plaintiff's rights. Plaintiff's SAC identifies only one state actor: Ms. Tirandazi, the city employee who processed Mr. Geraci's cannabis permit application and refused to transfer it to Plaintiff's name. SAC ¶¶ 44–52. While Plaintiff's pleading contains the conclusory allegation that Defendants conspired with her to deny Plaintiff his cannabis permit and interfere with the *Cotton I* litigation, SAC ¶ 159, Plaintiff alleges no facts that would support this inference. *Woodrum*, 866 F.2d at 1126 (conclusory allegations of a conspiracy are insufficient). For example, Plaintiff pleads no facts to show that any of the Defendants ever communicated with Ms. Tirandazi or entered into an agreement with her to violate Plaintiff's rights. Neither does he allege that they plotted, jointly executed, or cooperated in any action taken against Plaintiff. Rather, the allegations against Defendants center on actions they took as private attorneys representing Mr. Geraci or Plaintiff that have no nexus to Ms. Tirandazi or any other state actor. Accordingly, the Court finds that Plaintiff fails to allege Defendants acted under the color of state law to deny Plaintiff a cannabis permit or obstruct his access to the courts by covering up Mr. Geraci's illegal acts. *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1161 (9th Cir. 2003) (dismissing § 1983 claim against counsel in private practice and requiring more than conclusory allegations that the lawyer was conspiring with state officers). Because Plaintiff has not pled that Defendants acted under color of state law, his Section 1983 claims against them fail and should be dismissed.

In the event that the Court dismisses his complaint, Plaintiff has requested leave to amend his complaint "to include Tirandazi and replead his factual allegations focused on the unlawful acts by defendants that constitute a fraud on the court." Dkt. 112 at 18. Based on his proposed amendment, the Court finds that leave to amend would be futile to

overcome the deficiencies of his Section 1983 claim. Plaintiff's SAC already alleges Ms. Tirandazi's conduct in denying Plaintiff's cannabis application. His proposed amendment to add Ms. Tirandazi as a party would not alter the lack of factual allegations tying Ms. Tirandazi's actions to those of Defendants. Even if Ms. Tirandazi were added as a defendant, Plaintiff's complaint would still fail to plead that Defendants acted under color of state law. Similarly, Plaintiff's proposed addition of factual allegations regarding Defendants' alleged fraud on the court would not alter the analysis that Defendants did not act under the color of state law. As he does not propose to plead additional facts to demonstrate a conspiracy or joint action between Ms. Tirandazi and Defendants, the Court finds that granting this request could not cure the lack of state action that invalidates his Section 1983 claim. Accordingly, Plaintiff's request to amend is denied without leave to amend.

### B. Plaintiff Fails to Plead an Injury or Conspiracy to Sustain a Section 1985 Claim for Witness Intimidation

The Court next examines Plaintiff's claim that Defendants conspired to prevent Ms. Young from testifying as a witness in the *Cotton I* trial in violation of 42 U.S.C. § 1985. Defendants argue that Plaintiff's claim fails because he has not adequately pled the existence of such conspiracy or a resulting injury in a federal court proceeding.

To state a Section 1985(2) claim of witness intimidation, a plaintiff must allege "(1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) causes injury to the claimant." *Rutledge v. Arizona Bd. Of Regents*, 859 F.2d 732, 735 (9th Cir. 1988). The "gist of the wrong at which § 1985(2) is directed is…intimidation or retaliation against witnesses in federal-court proceedings." *Haddle v. Garrison*, 525 U.S. 121, 125 (1998). (Interference with state court proceedings falls under a separate

component of the statute that is inapplicable here.³)  Therefore, in order to plead the requisite injury, a plaintiff "must show that the conspiracy hampered [his] ability to present an effective case in federal court." *Rutledge*, 859 F.2d at 735.

First, the Court finds that Plaintiff fails to allege that Defendants conspired to prevent Ms. Young's testimony with sufficient factual specificity.  As with Section 1983 claims, a plaintiff needs to plead specific facts to support the existence of a conspiracy.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (affirming dismissal of Section 1985 conspiracy claim where the plaintiff failed to allege evidence of a conspiracy).  Plaintiff alleges that Defendants conspired with Mr. Magagna and Mr. Geraci to prevent Ms. Young from testifying on behalf of Plaintiff but does not allege any facts to support such a claim.  Plaintiff appears to ask this Court to infer conspiracy from the fact that Defendant Austin 1) went to law school with the attorney who represented Ms. Young when she cancelled her *Cotton I* deposition; and 2) at one time was counsel for the dispensary who employed Ms. Young after she moved to Palm Springs.  SAC ¶¶ 147–148, 180.  As to Defendants McElfresh and Demian, Plaintiff has pleaded no facts regarding their connection to Mr. Magagna, or their role in preventing Ms. Young from testifying. Allegations that Ms. Austin was at one time associated with a dispensary that offered Ms. Young a job, and that she attended law school with Ms. Young's attorney, SAC ¶¶ 137, 148–149, fall short of plausibly alleging that the three Defendants agreed and acted in concert to intimidate Ms. Young and prevent her from testifying.  SAC ¶¶ 187–189; *Karim-*

---

³ Section 1985(2) contains two components: (1) interference with federal litigation and (2) obstruction of justice at the state level.  42 U.S.C. § 1985(2).  Obstruction of justice at the state level requires a showing of "racial or class-based invidiously discriminatory animus." *Kush v. Rutledge*, 460 U.S. 719, 723 (1983); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991) (affirming dismissal of state level obstruction of justice claim for failure to allege membership in protected class or denial of equal protection).  Based on Plaintiff's complaint, which does not allege racial or class-based animus or any membership in a protected class, the Court construes his claim as one for interference with federal litigation.  Moreover, Plaintiff confirmed that his Section 1985(2) claim was based on interference with his federal litigation.  Dkt. 112 (Plaintiff's Opposition) at 112 ("The threats against Young and the prevention of her testimony constitute obstruction of justice in THIS Court") (emphasis in original).

*Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (finding mere allegation of conspiracy without factual specificity to be insufficient to state a Section 1985 claim). Accordingly, the Court concludes that Plaintiff fails to allege a conspiracy to state a Section 1985(2) claim of witness intimidation. Because Plaintiff's proposed amendments to add Ms. Tirandazi as a party and "replead" allegations focusing on "fraud on the court" would not cure the lack of allegations to support a Section 1985 conspiracy, the Court dismisses this claim without leave to amend.

Second, the Court concludes that Plaintiff has failed to plead that Defendants injured his ability to present an effective case in federal court. Plaintiff's complaint focuses on Ms. Young's refusal to provide testimony in the *Cotton I* state court litigation, not the federal litigation. Specifically, Plaintiff alleges that Ms. Young "would not testify and did not want anything to do with Cotton or *Cotton I*." SAC ¶ 142. He also alleges that her attorney "unilaterally" cancelled Ms. Young's deposition and took actions rendering it "too late" for Plaintiff to "subpoena[] her for trial at *Cotton I*". SAC ¶¶ 145, 147. Plaintiff argues that the lack of Ms. Young's testimony also impacted the current litigation because the federal action was originally filed prior to the conclusion of *Cotton I*. He, however, provides no factual allegations explaining how the loss of Ms. Young's testimony injured his ability to present his current case in federal court. Nor can he plausibly do so when his current action is premised on the injury he suffered because Ms. Young did not testify. *Iqbal*, 556 U.S. 662; SAC ¶¶ 123–129. Because Plaintiff does not and cannot plausibly show that he was "hampered" in his ability to present his case in a federal court as a result of losing Ms. Young's testimony, *Rutledge*, 859 F.2d at 735, the Court dismisses his Section 1985(2) claim without leave to amend. *Chappel*, 232 F.3d at 725–26 (denying leave to amend when amendment would be futile).

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendants' motions to dismiss [Dkts. 98, 99, 100] and DISMISSES Plaintiff's SAC without leave to amend. Plaintiff's motion for leave to electronically file documents [Dkt. 116] is DENIED as moot.

**IT IS SO ORDERED**.

Dated:  September 21, 2022

_____
Honorable Jinsook Ohta
United States District Judge